IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

ADAM R. WEST, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-10-086-RAW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Adam R. West (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant - taking into account his age, education, work experience, and RFC - can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 25, 1979 and was 28 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has past relevant work as a restaurant and theater assistant manager, farm hand, heavy equipment operator,

3

sales clerk, production line welder, and security officer. Claimant alleges an inability to work beginning May 19, 2003 due to bipolar disorder and pain in his neck, back, hip, knees, and ankles.

## Procedural History

On January 19, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 22, 2007, an administrative hearing was held before ALJ Lantz McClain in Tulsa, Oklahoma. On November 19, 2007, the ALJ issued an unfavorable decision on Claimant's application. On January 11, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) failing to properly assess Claimant's RFC; (2) finding Claimant could perform other work; and (3) failing to properly evaluate Claimant's credibility.

## RFC Evaluation

Claimant asserts the ALJ erroneously failed to consider certain limitations found by a consultative physician in his RFC evaluation of Claimant. By his admission, Claimant was injured while he was serving in the military during a parachuting accident which caused back problems. In 2004, Claimant sustained an ankle injury requiring reconstructive surgery. He rates his pain as 7 out of 10. Claimant also suffers from bipolar disorder manifested in severe mood swings and uncontrollable anger and fights. He states he cannot and does not want to be around people. (Tr. 324). Claimant has been treated for his psychiatric condition at the VA hospital in Muskogee, Oklahoma. In August of 2004, Claimant was diagnosed at Axis I: Bipolar disorder, NOS, Impulse control disorder, NOS; Axis II: Deferred; Axis III: Chronic pain syndrome; Axis IV: Stressors are psychosocial, unemployment; Axis V: Current GAF of 58. (Tr. 209). Claimant reported his mind races and he has difficulty sleeping. (Tr. 208). Claimant has

5

problems with irritability, has had homicidal ideations in the past but with no plan or intent. He was not suicidal. He has learned to handle his violent thoughts by staying to himself. Claimant denies visual or auditory hallucinations. (Tr. 209).

Claimant states that he wears ankle braces when he walks. (Tr. 134). His daily activities are reported as eating, lying on a heating pad, taking walks, performing light household chores such as cleaning and doing laundry, watching television, and resting. (Tr. 128, 130). Claimant performs his daily grooming needs. (Tr. 129). He drives, occasionally going to the grocery store or visits. (Tr. 131-32).

On November 2, 2004, Claimant underwent an consultative psychological evaluation by Dr. Stephanie C. Crall. Dr. Crall diagnosed Claimant at Axis I: Bipolar I Disorder, Most Recent Episode Manic, Moderate; Axis II: No Diagnosis; Axis III: Deferred; Axis IV: Unemployment, Inadequate Finances, Social Isolation; Axis V: GAF of 49. (Tr. 502). Claimant cites to two statements made in Dr. Crall's assessment report to support functional limitations. Dr. Crall states in the "Social and Environmental History" section of her report that "[i]n general, his ability to complete tasks appropriately and within a timely manner was likely poor." She also reports that Claimant "appeared

6

socially isolated at the time of this assessment." (Tr. 501). Dr. Crall also found Claimant's "[f]unctional memory as assessed through the recall of three objects after a five-minute period of time was not seen as being intact." (Tr. 502).

On June 5, 2006, Claimant underwent a consultative mental health evaluation by Dr. Cynthia Kampschaefer. Dr. Kampschaefer found marked limitations in Claimant's ability to understand and remember detailed instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public. (Tr. 345-46). Dr. Kampschaefer concluded Claimant "can remember, understand and carry out simple instructions under routine supervision. He can relate to coworkers and supervisors in an incidental manner. He can adapt to a work environment. He cannot tolerate active involvement with the general public." (Tr. 347).

In his decision, the ALJ found Claimant suffered from the severe impairments of status post bilateral ankle injuries and spinal injury, gastric dumping syndrome, bipolar disorder, personality disorder, and impulse control disorder. (Tr. 10). Claimant's RFC was assessed as occasional lifting and/or carrying of 10 pounds and frequent lift and/or carrying of 10 pounds, standing and/or walking at least 2 hours in an 8 hour workday,

sitting at least 6 hours in an 8 hour workday, performing simple, repetitive tasks with incidental contact with the public and ready access to a restroom. (Tr. 11).

With regard to the consultative evaluation by Dr. Crall, the ALJ found that Dr. Crall's finding of a GAF of 49 was inconsistent with the balance of her report as well as the records of Claimant's treating physicians. Specifically, the ALJ found the VA doctors had assessed Claimant's GAF between 54 and 68 in 2004 and 2005. (Tr. 14). The ALJ concludes that because of the discrepancy in the records, he could not "afford controlling weight to Dr. Crall's opinions." Id.

As Claimant points out, Dr. Crall's opinions could never be given controlling weight since she was clearly not a treating physician. For purposes of Claimant's RFC assessment, the question is whether the ALJ adequately considered Dr. Crall's opinions. Claimant first contends the ALJ failed to state the basis for a finding of inconsistencies between the opinions of the treating physicians and Dr. Crall. The ALJ clearly sets out the inconsistency between the GAF findings of the treating physicians and that found by Dr. Crall. This is not error.

Claimant also contends Dr. Cralls' findings as to memory and the inability to complete tasks should have been considered by the

ALJ. The ALJ included moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace in his RFC evaluation. (Tr. 11). "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3). By including this limitation in Claimant's RFC, the ALJ adequately considered the functions of memory and the inability to complete a task in his assessment. The fact he did not attribute this limitation to Dr. Crall does not render his assessment invalid.

Claimant also contends the ALJ's assessment of his mental impairment was inadequate because he did not include Claimant's history of an inability to deal with authority figures and his continuing anger and irritability. Claimant translates these problems into an inability to deal with supervisors and coworkers, including an inability to handle criticism and receive instructions. Other than Claimant's attorney, no other professional has found such a limitation upon Claimant's ability to function in the workplace. Indeed, Dr. Kampschaefer found just the opposite in her conclusions. Certainly, Dr. Crall's report does

not support such a finding. This Court finds no error in the ALJ's assessment of the effect of Claimant's mental impairments upon his ability to engage in substantial gainful activity.

Claimant also challenges the ALJ's assessment of his physical RFC. Specifically, Claimant contends the ALJ should have quantified the number of trips to the restroom required by Claimant's gastric dumping syndrome in his questioning of the vocational expert and inquired as to the effect the trips would have had upon is daily work. The ALJ included a limitation in his hypothetical questioning of the vocational expert for "ready access to a bathroom." In effect, the ALJ put no restrictions upon the number of trips to the restroom Claimant would be required to make rather than placing a number limitation as Claimant suggests he should have done.

Claimant also asserts the ALJ should have stated how he arrived at the RFC assessment that Claimant could sit for 6 hours out of an 8 hour workday and stand/walk for 2 hours in an 8 hour workday and attributed the limitations imposed by his ankle and back conditions to these time assessments. This Court must agree with Claimant that the ALJ simply sets out the RFC physical limitations in his ability to sit, stand, and walk without stating the evidence relied upon to reach these conclusions. It can be

10

presumed that the ALJ relied at least in part upon Dr. Shafeek Sanbar's physical RFC evaluation accomplished on June 15, 2006. (Tr. 350). However, even this report does not fully support the limitations found by the ALJ. On remand, the ALJ shall fully set forth the evidence in the record he considered in reaching his RFC findings.

### Vocational Findings

Claimant also contends the ALJ questioning of the vocational expert was flawed because he never received an answer to the question as to whether the vocational expert deviated from the Dictionary of Occupational Titles ("DOT"). As Claimant indicates, the DOT does not provide for a "machine operator" which is sedentary and unskilled. An ALJ is required to investigate and elicit a reasonable explanation from the vocational expert for any conflict between the expert's findings and the DOT before he may rely upon the testimony. Haddock v. Apfel, 196 F.3d 1084, 1091-92 (10th Cir. 1999). On remand, the ALJ shall investigate and obtain the explanation for the apparent variance.

### Credibility Evaluation

The ALJ determined Claimant's testimony regarding his limitations was not entirely credible. (Tr. 13). Claimant contends the ALJ's findings as to improvement which contradicts

Claimant's testimony is attributable to Claimant being in a "structured" and "highly restrictive" environment, requiring the application of Soc. Sec. R. 85-15. Claimant contends the ALJ should have considered the effect of his mental impairments in the unstructured workplace. The record supports the ALJ's conclusions that treatment improves Claimant's ability to cope with his condition. Nothing in the record indicates that if Claimant is placed in the workplace that the treatment would be less effective in helping Claimant recognize his anger and irritability problems.

The ALJ also discounted Claimant's credibility because of non-compliance with treatment, finding that Claimant failed to take his Lithium as prescribed and failed to make appointments. On remand, however, the ALJ shall comply with Soc. Sec. R. 96-7p to determine whether Claimant had a reason for non-compliance before allowing this fact to bear upon his credibility.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties

are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE